# United States Tax Court

T.C. Memo. 2022-99

LORI MICHELLE PATITZ AND ANDREW ROBERT MOODY,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 2784-19.                    Filed September 27, 2022.

————

Lori Michelle Patitz and Andrew Robert Moody, pro se.

*Jeremy D. Cameron*, *A. Gary Begun*, and *Mark J. Tober*, for respondent.


## MEMORANDUM FINDINGS OF FACT AND OPINION

WEILER, *Judge*: Respondent determined that petitioners, Mrs. Patitz and Mr. Moody, are liable for federal income tax deficiencies of $7,495 and $15,366 and accuracy-related penalties pursuant to section 6662(a)[1] of $1,499 and $3,073 for 2015 and 2016, respectively. Petitioners invoked the Court's jurisdiction by timely filing a Petition for redetermination. Petitioners resided in Florida when the Petition was filed.

———————

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts are rounded to the nearest dollar.

[*2]    After concessions,[2] the issues for decision are whether petitioners are (1) entitled to Schedule A deductions for 2015 and 2016, (2) entitled to Schedule C deductions for 2015 and 2016, and (3) liable for accuracy-related penalties under section 6662(a) for 2015 and 2016.

FINDINGS OF FACT

I.    *Petitioners' Backgrounds*

A.    *Mrs. Patitz*

During 2015 and 2016 Mrs. Patitz was employed by Ricoh USA, Inc. (Ricoh), in various roles. During this same period she also worked as a self-employed contractor selling life insurance policies.

As a Ricoh account executive, Mrs. Patitz was responsible for reaching out to all current and potential customers in Broward County, Florida. As a Ricoh major account executive, she was responsible for calling on all current and potential customers in Miami-Dade County, Florida. Additionally, as a Ricoh employee, she was given "activity standards" that outlined what was expected of her in her roles as an account executive and a major account executive. The activity standards required her to meet weekly sales goals with potential customers. As an account executive and a major account executive, she received $200 and $350 monthly business expense stipends, respectively, to offset her business expenses.

In 2016 Mrs. Patitz continued to work for Ricoh in her role as a major account executive, and beginning in or around June 2016 she transitioned to a digital imaging specialist position. This position required her to travel between Jacksonville, Orlando, and Tampa, Florida. As a digital imaging specialist her responsibilities included traveling to and from Ricoh client sites to scan and digitize client records. Since Ricoh would reimburse her for travel expenses incurred outside of Jacksonville, Mrs. Patitz's weekly mileage expenses accounted only for her local trips in Jacksonville.

---

[2] Respondent concedes that petitioners are entitled to partial deductions for expenses reported on their 2016 Schedule A, Itemized Deductions, for medical expenses of $18,598. Petitioners concede they are not entitled to deductions claimed on Schedule C, Profit or Loss From Business, for a mortgage interest expense for 2016 or partial car and truck expenses for 2015 and 2016.

[*3]   While still working full time for Ricoh, Mrs. Patitz obtained her insurance license and in 2015 began expanding her insurance business, selling supplemental insurance policies through PMA USA. She traveled to various company worksites with the goal of selling policies to the employees. When she was not traveling between worksites, Mrs. Patitz conducted business from her home office. She continued to sell life insurance policies during 2016. However, she ultimately transitioned from direct-to-individual sales to selling packaged insurance plans to various employers.

B.    *Mr. Moody*

During 2015 and part of 2016 Mr. Moody was employed by Blue Streak Courier (Blue Streak) as an area manager responsible for managing the south Florida region. Specifically, he served the area spanning Vero Beach to Key West, Florida.

Mr. Moody's duties included the delivery of "on-demand" packages as well as packages that other delivery couriers either left behind or were unable to deliver. His duties also included ensuring that the couriers were working in a professional and efficient manner and that the warehouses were properly maintained. He was required to travel to Blue Streak's warehouses weekly and occasionally would have to stay overnight in hotels. Blue Streak paid hotel expenses while he was traveling.

Mr. Moody continued to work for Blue Streak until petitioners moved from Fort Lauderdale, Florida, to Jacksonville where he began a new career as a teacher and was employed during the latter half of 2016.

II.    *Petitioners' 2015 Tax Return*

Using married filing jointly status petitioners timely filed their joint 2015 Form 1040, U.S. Individual Income Tax Return (2015 joint return), reporting income of $103,107 from Forms W–2, Wage and Tax Statement. Petitioners attached Schedule A to their 2015 joint return (2015 Schedule A) and reported unreimbursed employee expenses of $37,906.

Petitioners also attached Schedule C to their 2015 joint return for Mrs. Patitz's insurance business, reporting gross receipts of $3,736 and expenses totaling $23,046, which resulted in a business loss of $19,310.

**[*4]** A.  *Schedule A Expenses*

Petitioners attached to their 2015 joint return Forms 2106, Employee Business Expenses, reporting expenses deducted as Schedule A unreimbursed employee expenses, which are detailed below.

1.  *Vehicle Expenses*

Mrs. Patitz reported 37,250 business miles and claimed a vehicle expense deduction of $21,419. Mr. Moody reported business miles of 19,970 and claimed a vehicle expense deduction of $11,483.[3]

Petitioners each kept handwritten contemporaneous mileage logs while traveling and subsequently transferred the entries into electronic logbooks.

2.  *Meals and Entertainment Expenses*

Mrs. Patitz and Mr. Moody reported meals and entertainment expenses of $7,322 and $3,546, respectively.

Mrs. Patitz provided a single Denny's restaurant receipt; however, petitioners did not otherwise produce any documentation such as bank statements, itemized receipts, or credit card statements to substantiate their meals and entertainment expenses.

3.  *Tool and Supply Expenses*

Mr. Moody reported tool and supply expenses of $1,455. He did not provide any bank statements, itemized receipts, or credit card statements related to his tool and supply expenses, nor did he provide any documentation indicating that Blue Streak employees were required to purchase their own tools or supplies to perform their duties.

4.  *Uniform Expenses*

Mr. Moody reported uniform expenses of $355. He did not provide any bank statements, itemized receipts, or credit card statements related to his uniform expenses, nor did he provide any documentation indicating that Blue Streak employees were required to purchase uniforms.

---

[3] Mr. Moody's 2015 vehicle expenses after reimbursement are $8,568.

**[*5]**     5.     *Other Business Expenses*[4]

Mrs. Patitz reported other business expenses of $675. Included in these expenses are $500 for an iPad used for work presentations and $150 for a keylike device Ricoh account executives use to unlock and read Ricoh machine data. She paid for the keylike device in cash. She did not explicitly identify her remaining other business expenses.

Mr. Moody reported other business expenses of $245 but did not identify what they comprised.

Petitioners did not provide any bank statements, itemized receipts, or credit card statements regarding their other business expenses.

B.     *Schedule C Expenses*

Mrs. Patitz reported the following Schedule C expenses for 2015:

---

[4] For purposes of this Report, other business expenses are employee business expenses reported on Forms 2106 other than vehicle expenses, parking fees, tolls, transportation expenses, travel expenses while away from home overnight, and meals and entertainment expenses. Though the other business expenses were not specified on Forms 2106, petitioners ultimately disclosed at trial what some of these other expenses comprised.

[*6]

| Expense | Amount |
|---|---|
| Business Use of Home | $536 |
| Meals and Entertainment | 1,789 |
| Supplies | 987 |
| Repairs and Maintenance | 1,487 |
| Legal and Professional Services | 192 |
| Insurance (Other than Health) | 365 |
| Utilities | 3,650 |
| Office | 3,345 |
| Car and Truck | 10,695 |
| **Total** | **$23,046** |

Mrs. Patitz did not provide any records, bank statements, itemized receipts, or credit card statements substantiating her 2015 Schedule C expenses.

III.   *Petitioners' 2016 Tax Return*

Using married filing jointly status, petitioners timely filed their joint 2016 Form 1040 (2016 joint return) reporting Form W–2 income of $163,927. They attached Schedule A claiming deductions for medical expenses of $28,074 and unreimbursed employee expenses of $5,716.[5]

Petitioners also attached Schedule C to their 2016 joint return for Mrs. Patitz's insurance business, reporting gross receipts of $955 and expenses totaling $39,350, which resulted in a business loss of $38,395.

---

[5] On their 2016 Schedule A petitioners also claimed deductions for home mortgage interest of $10,753, state and local tax of $3,224, and charitable contributions of $3,800; however, none of these amounts is in dispute. Petitioners' claimed 2016 Schedule A deductions total $37,921.

**[\*7]**   A.   *Schedule A Expenses*

      1.   *Employee Business Expenses*

Petitioners attached to their 2016 joint return Forms 2106 reporting expenses deducted as Schedule A unreimbursed employee expenses, which are detailed below.

      a.   *Vehicle Expenses*

Mr. Moody reported 8,230 business miles and claimed a vehicle expense deduction of $4,444.[6] He maintained a handwritten contemporaneous mileage log while traveling and subsequently transferred the entries into an electronic logbook.

      b.   *Meals and Entertainment Expenses*

Mr. Moody reported meals and entertainment expenses of $675. He did not provide any bank statements, itemized receipts, or credit card statements to substantiate these expenses. Moreover, he did not provide documentation indicating that his employment as a Blue Streak area manager required him to incur meals and entertainment expenses.

      c.   *Other Business Expenses*

Mrs. Patitz reported other business expenses of $79 but did not identify what they comprised. Mr. Moody reported other business expenses of $855. While this amount includes teaching expenses of $524, Mr. Moody did not otherwise identify the remainder.

Petitioners produced bank statements and itemized receipts relating to Mr. Moody's teaching expenses but did not otherwise provide any documentation to substantiate their other business expenses.

      2.   *Medical Expenses*

Petitioners deducted medical expenses of $28,074.[7] They provided receipts indicating medical expenses on behalf of Mrs. Patitz's father, as well as medical expenses they incurred on behalf of themselves and their

---

[6] In 2016 Mr. Moody did not receive reimbursement from his employer for his vehicle expenses.

[7] At trial Mrs. Patitz testified that the actual deduction should be $41,648. This amount was further increased on brief to $48,000.

[*8] dependent children. Petitioners did not provide accompanying bank statements or credit card statements substantiating these expenses.[8]

B.     *Schedule C Expenses*

Mrs. Patitz reported the following Schedule C expenses for the 2016 tax year:

| Expense | Amount |
|---|---|
| Business Use of Home | $2,292 |
| Meals and Entertainment | 4,770 |
| Supplies | 985 |
| Repairs and Maintenance | 2,483 |
| Legal and Professional Services | 386 |
| Insurance (Other than Health) | 2,220 |
| Utilities | 3,792 |
| Office | 1,679 |
| Car and Truck | 16,165 |
| Travel | 1,563 |
| Mortgage Interest | 5,307 |
| **Total** | **$41,642** |

Mrs. Patitz did not provide any records, bank statements, itemized receipts, or credit card statements substantiating her 2016 Schedule C expenses.

---

[8] At trial Mrs. Patitz admitted receiving financial assistance from family members to offset the cost of some of the medical expenses she incurred on behalf of her father. There is no indication in the record that Mrs. Patitz paid back any of the money she received to offset these expenses.

**[*9]** IV.   *Notice of Deficiency*

In a civil penalty approval form dated August 6, 2018, Sarah Muchow made the initial determination to assert accuracy-related penalties for 2015 and 2016. Ms. Muchow's then-immediate supervisor, Morgan Grieco, signed the civil approval penalty form on August 7, 2018.

On November 7, 2018, respondent issued petitioners a notice of deficiency based on a finding of petitioners' lack of substantiation for certain claimed deductions and failure to establish ordinary and necessary business purposes for certain claimed deductions. Respondent disallowed deductions for all Schedule A expenses reported on petitioners' Forms 2106 for 2015 and applied the standard deduction to petitioners' 2015 joint return. Respondent also disallowed $19,354 of deductions petitioners claimed on their 2016 Schedule A. Lastly, respondent disallowed all deductions claimed on Schedules C for 2015 and 2016. Respondent determined that petitioners are liable for tax deficiencies of $7,495 and $15,366 for 2015 and 2016, respectively. The notice of deficiency determined accuracy-related penalties for substantial understatements of income tax under section 6662(a) and (b)(2) of $1,499 and $3,073 for 2015 and 2016, respectively.

OPINION

I.   *General Legal Principles*

Generally, the Commissioner's determination of a taxpayer's liability in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933).[9] Deductions are a matter of legislative grace, and the taxpayer generally bears the burden of proving entitlement to any deduction claimed. Rule 142(a); *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992); *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934).

Under section 162(a), a deduction is allowed for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. However, a deduction normally is not available for personal, living, or family expenses. I.R.C. § 262(a). Whether an

---

[9] Section 7491(a)(1) shifts the burden of proof to the Commissioner in certain defined circumstances. Petitioners do not contend, nor does the record suggest, that it does so here. Therefore, the burden remains with petitioners.

**[\*10]** expenditure satisfies the requirements for deductibility under section 162 is a question of fact. *See Commissioner v. Heininger*, 320 U.S. 467, 475 (1943). An ordinary expense is one that commonly or frequently occurs in the taxpayer's business, *Deputy v. du Pont*, 308 U.S. 488, 495 (1940), and a necessary expense is one that is appropriate and helpful in carrying on the taxpayer's business, *Commissioner v. Heininger*, 320 U.S. at 471; Treas. Reg. § 1.162-1(a).

A taxpayer claiming a deduction on a federal income tax return must demonstrate that the deduction is allowable pursuant to a statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred. I.R.C. § 6001; *Hradesky v. Commissioner*, 65 T.C. 87, 89–90 (1975), *aff'd per curiam*, 540 F.2d 821 (5th Cir. 1976). A taxpayer must substantiate deductions claimed by keeping and producing adequate records that enable the Commissioner to determine the taxpayer's correct tax liability. I.R.C. § 6001; *Hradesky*, 65 T.C. at 89–90.

When a taxpayer establishes that he or she paid or incurred a deductible expense but fails to establish the amount of the deduction, the Court may sometimes estimate the amount allowable as a deduction. *Cohan v. Commissioner*, 39 F.2d 540, 543–44 (2d Cir. 1930); *Vanicek v. Commissioner*, 85 T.C. 731, 742–43 (1985). However, there must be sufficient evidence in the record to permit the Court to conclude that a deductible expense was paid or incurred in at least the amount allowed. *Williams v. United States*, 245 F.2d 559, 560 (5th Cir. 1957).

Section 274(d) prescribes more stringent substantiation requirements to be met before a taxpayer may deduct certain categories of expenses, including travel expenses, meals and lodging while away from home, and expenses with respect to listed property as defined in section 280F(d)(4), which includes passenger automobiles.[10] *See Sanford v. Commissioner*, 50 T.C. 823, 827 (1968), *aff'd per curiam*, 412 F.2d 201 (2d Cir. 1969). Consequently, even if such an expense would otherwise be deductible, section 274(d) may still preclude a deduction if the

---

[10] "Listed property" as defined in section 280F(d)(4) includes passenger automobiles, which are defined as four-wheeled vehicles weighing under 6,000 pounds and manufactured primarily for use on public streets and highways. I.R.C. § 280F(d)(5)(A). A passenger automobile does not include any ambulance, hearse, or vehicle used by the taxpayer directly in a trade or business of transporting persons or property for compensation or hire. *See* I.R.C. § 280F(d)(5)(B); *Hatte v. Commissioner*, T.C. Memo. 2019-109, at \*7 n.3.

**[\*11]** taxpayer does not present sufficient substantiation. Temp. Treas. Reg. § 1.274-5T(a).[11]

Temporary Treasury Regulation § 1.274-5T(c)(2) provides in relevant part that "adequate records" generally consist of an account book, diary, log, statement of expenses, trip sheet, or similar record made at or near the time of the expenditure or use, along with supporting documentary evidence. The Court may not use the rule established in *Cohan* to estimate expenses covered by section 274(d). *Sanford*, 50 T.C. at 827; Temp. Treas. Reg. § 1.274-5T(a).[12]

If a taxpayer's records are lost or destroyed through circumstances beyond his or her control, he or she may substantiate expenses through reasonable reconstruction. *See Boyd v. Commissioner*, 122 T.C. 305, 320 (2004); Temp. Treas. Reg. § 1.274-5T(c)(5). While "the inability to produce a record which is unintentionally lost, whether by . . . [the taxpayer] or by a third party, alters the type of evidence which may be offered to establish a fact," it does not affect the burden of proving a fact. *Malinowski v. Commissioner*, 71 T.C. 1120, 1125 (1979). Crucial to this reconstruction is that the secondary evidence be credible. *See, e.g., Boyd*, 122 T.C. at 320. If no other documentation is available, the Court may, but is not required to, accept a taxpayer's credible testimony to substantiate an expense. *Id.*

Ex parte statements in posttrial briefs do not constitute evidence. Rule 143(c); *Evans v. Commissioner*, 48 T.C. 704, 709 (1967), *aff'd per curiam*, 413 F.2d 1047 (9th Cir. 1969); *Leith v. Commissioner*, T.C. Memo. 2020-149, at \*15; *Chapman v. Commissioner*, T.C. Memo. 1997-147, 73 T.C.M. (CCH) 2405, 2408.

---

[11] To deduct these expenses the taxpayer must substantiate by adequate records or by sufficient evidence corroborating the taxpayer's own statement (1) the amount of the expense; (2) the time and place of the expense; and (3) the business purpose of the expense. Temp. Treas. Reg. § 1.274-5T(a), (b), and (c).

[12] Taxpayers lacking a contemporaneous log are expected to maintain a record created as near in time as possible to the particular expenditure (including the elements outlined above), supported by corroborative documentary evidence that carries with it a high degree of probative value. Temp. Treas. Reg. § 1.274-5T(c)(1). If a taxpayer does not satisfy the adequate records requirements with respect to one or more elements, he or she may substantiate those elements with his or her own detailed statement and with other corroborative evidence. *Id.* subpara. (3).

**[\*12]** II.  *Schedule A Deductions*

On petitioners' 2015 joint return Mrs. Patitz claimed a deduction for unreimbursed employee expenses for vehicle mileage, meals and entertainment, and other business expenses, and Mr. Moody claimed a deduction for unreimbursed employee expenses for vehicle mileage, meals and entertainment, tools and supplies, uniforms, and other business expenses. On petitioners' 2016 joint return, Mrs. Patitz claimed a deduction for unreimbursed employee expenses for other business expenses, and Mr. Moody claimed a deduction for unreimbursed employee expenses for vehicle mileage, meals and entertainment, and other business expenses.

A.  *Employee Expenses*

Generally, a taxpayer may deduct unreimbursed employee business expenses as an ordinary and necessary business expense under section 162. *Lucas v. Commissioner*, 79 T.C. 1, 6 (1982); *Primuth v. Commissioner*, 54 T.C. 374, 377 (1970). Miscellaneous itemized deductions are allowed only to the extent that, in the aggregate, they exceed 2% of adjusted gross income. I.R.C. § 67(a). Deductible expenses allowed under section 67(a) include unreimbursed employee expenses such as expenses for transportation, travel fares and lodging while away from home, business meals and entertainment, and professional uniforms. *See* Treas. Reg. § 1.67-1T(a)(1)(i).

To the extent that a taxpayer is entitled to (but does not claim) reimbursement from his or her employer for expenditures related to his or her status as an employee, a deduction for an expense under section 162(a) is not allowed. *Lucas*, 79 T.C. at 7. Such expenses are not considered "necessary." *Orvis v. Commissioner*, 788 F.2d 1406, 1408 (9th Cir. 1986), *aff'g* T.C. Memo. 1984-533; *Podems v. Commissioner*, 24 T.C. 21, 22–23 (1955). Moreover, certain business expenses may not be estimated because of the strict substantiation requirements of section 274(d). *See* I.R.C. § 280F(d)(4)(A); *Sanford*, 50 T.C. at 827–28. For such expenses, only certain types of documentary evidence will suffice. *Sanford*, 50 T.C. at 827–28.

At trial petitioners testified that they were unable to provide documentation, such as receipts and financial statements, that could have substantiated their Schedule A expenses for multiple reasons, including that the correlating credit card accounts had been closed because of fraud, the boxes containing potential statements were left

**[*13]** behind from moving three times since 2015, or the documents were destroyed from Hurricane Matthew water damage.[13]

The Court carefully reviewed the documents that petitioners did submit into the record, and except for vehicle expenses, we do not find adequate substantiation for any of the Schedule A unreimbursed employee expense deductions at issue. Consequently, respondent's disallowance of these deductions is sustained.

We will discuss each of the claimed deductions for unreimbursed employee expenses in turn below.

1. *Vehicle Expenses*

Respondent disallowed a deduction for vehicle expense of $32,902 for 2015 and $4,444 for 2016, contending that petitioners did not meet the strict substantiation requirements under section 274(d). Petitioners disagree.

In general, the cost of daily commuting to and from work is a nondeductible personal expense. *See Commissioner v. Flowers*, 326 U.S. 465, 473–74 (1946); Treas. Reg. § 1.162-2(e). However, "[u]nreimbursable transportation expenses incurred between two places of business are deductible." *Gilliam v. Commissioner*, T.C. Memo. 1986-90, 51 T.C.M. (CCH) 567, 572 (citing *Steinhort v. Commissioner*, 335 F.2d 496, 503–05 (5th Cir. 1964), *aff'g and remanding* T.C. Memo. 1962-233).

To prevail petitioners must first prove that their vehicle mileage arises from deductible business-related travel rather than nondeductible commuting. At trial Mrs. Patitz testified that while a Ricoh account executive she was obligated to drive to meet with customers. Mr. Moody testified that his area manager duties required him to visit and inspect warehouses and often make deliveries.

Any deduction claimed with respect to the use of a passenger automobile, like petitioners' vehicles, will be disallowed unless the taxpayer can substantiate specified elements of the use by adequate records or by sufficient evidence corroborating the taxpayer's own statement. *See* I.R.C. § 274(d); Temp. Treas. Reg. § 1.274-5T(c)(1). The elements that must be substantiated to deduct the business use of an automobile are (i) the amount of the expenditure, (ii) the mileage for

---

[13] Hurricane Matthew affected Florida's east coast during October 2016.

**[\*14]** each business use of the automobile and the total mileage for all uses of the automobile during the taxable period, (iii) the date of the business use, and (iv) the business purpose of the use of the automobile. *See* Temp. Treas. Reg. § 1.274-5T(b)(6).

In lieu of substantiating the actual amount of expenditure relating to the business use of a passenger automobile, a taxpayer may use the standard mileage rate established by the Internal Revenue Service. *See* Treas. Reg. § 1.274-5(j)(2). Use of the standard mileage rate establishes the amount deemed expended with respect to the business use of a passenger automobile, but such use does not relieve a taxpayer of the burden of substantiating the other elements required by section 274 and the regulations thereunder. Treas. Reg. § 1.274-5(j)(2).

Petitioners presented the Court with contemporaneous travel logs necessary to meet the strict substantiation requirements of section 274(d). Specifically, Mrs. Patitz testified to handwritten mileage logs she created when she visited clients and would subsequently transfer this information to electronic logbooks. The electronic logbooks Mrs. Patitz provided documented her weekly total mileage, her weekly business mileage, and her weekly commuting mileage. However, she also testified that while the mileage log was written contemporaneously, she inadvertently commingled her business mileage between Ricoh and her insurance business activities. During trial Mrs. Patitz conceded that her insurance business miles should be excluded, and we agree.

Mr. Moody also testified that he would transfer the handwritten travel logs that he created to an electronic logbook. Mr. Moody's electronic logbooks documented the total miles he drove each week and the business purpose of the drive.

Having observed petitioners' appearance and demeanor at trial, we find their testimony to be credible with respect to their claimed deductions for vehicle mileage on behalf of their respective employers. Consequently, respondent's disallowance is overruled, and the Court finds that petitioners are entitled to their claimed deductions for Schedule A vehicle expenses for Mr. Moody's 2015 and 2016 vehicle milage expenses to the extent he was not reimbursed by Blue Streak and for Mrs. Patitz's 2015 vehicle expenses to the extent of her Ricoh business miles.

**[\*15]**       2.       *Meals and Entertainment Expenses*

Respondent disallowed deductions for meals and entertainment expenses of \$5,434 and \$338 for 2015 and 2016, respectively.[14] Deductions for meals and entertainment expenses are subject to the strict substantiation requirements of section 274(d).

Petitioners failed to introduce sufficient evidence to meet the strict substantiation requirements of section 274(d) regarding meals and entertainment expenses. Accordingly, we find that petitioners have not met their burden under section 274(d), and respondent's disallowance of their claimed deductions for meals and entertainment expenses is sustained.

3.       *Tool and Supply Expenses*

Respondent disallowed a deduction for tool and supply expenses of \$1,455 for 2015. Mr. Moody stated on brief that the tool and supply receipts from 2015 were lost because of Hurricane Matthew. While the loss of the records was due to unfortunate circumstances, the Court carefully reviewed the record and does not find adequate evidence to allow the deduction. *See* Temp. Treas. Reg. § 1.274-5T(c)(5). Moreover, even if there was sufficient evidence in the record, Mr. Moody failed to testify that the tool and supply expenses were ordinary and necessary business expenses under section 162(a).

Accordingly, we find that Mr. Moody has not met his burden with respect to the tool and supply expense deductions, and respondent's disallowance is sustained.

4.       *Uniform Expenses*

Respondent disallowed a deduction for uniform expenses of \$355 for 2015. Uniform expenses are deductible under section 162(a) if the uniforms are (1) of a type specifically required as a condition of employment, (2) not adaptable to general use as ordinary clothing, and (3) not so worn. *Yeomans v. Commissioner*, 30 T.C. 757, 767 (1958).

Mr. Moody stated on brief that the receipts for 2015 were lost because of Hurricane Matthew. Mr. Moody also stated on brief that the

---

[14] Under section 274 the meals and entertainment expenses deduction is limited to 50% of the reported amount. I.R.C. § 274(n).

**[\*16]** uniforms were similar to those worn by United Parcel Service employees.

The Court carefully reviewed the record and does not find adequate evidence to allow the deduction. We are not obligated to consider ex parte statements submitted on brief. *See* Rule 143(c).

Consequently, we find that Mr. Moody has not met his burden with respect to the deduction claimed for uniform expenses, and respondent's disallowance is sustained.

### 5. *Other Business Expenses*

Respondent disallowed deductions for other business expenses of $675 and $79 for 2015 and 2016, respectively, attributed to Mrs. Patitz and $245 and $855 for 2015 and 2016, respectively, attributed to Mr. Moody.

There is insufficient evidence in the record to provide a basis for this Court to conclude that petitioners actually incurred these expenses. Petitioners testified that Hurricane Matthew destroyed some of their records for 2015; however, we are not persuaded that bank statements, credit card statements, or any other evidence demonstrating petitioners' actual payment of these expenses no longer exists or was impossible to introduce into the record. *See* Temp. Treas. Reg. § 1.274-5T(c)(5). Accordingly, we find that petitioners did not meet their burden with respect to these expenses, and respondent's disallowance of petitioners' claimed deductions for other business expenses is sustained.

### B. *Medical Expenses*

Respondent partially disallowed a deduction for medical expenses for the 2016 tax year. Petitioners argued that they are entitled to an increased deduction for medical expenses of $41,648 at trial and $48,000 on brief.

A taxpayer may deduct expenses not compensated by insurance or otherwise that are paid during the taxable year for the medical care of the taxpayer, the taxpayer's spouse, and the taxpayer's dependents. I.R.C. § 213(a); *Estate of Smith v. Commissioner*, 79 T.C. 313, 318 (1982). A medical expense deduction is not precluded for failure to claim the reimbursement under an existing insurance policy. *Weaver v. Commissioner*, T.C. Memo. 1984-634, 49 T.C.M. (CCH) 249, 252. However, the taxpayer bears the burden of proof to establish that the

**[\*17]** taxpayer was not reimbursed. *See id.* (finding that the taxpayer's burden was met where the taxpayer testified that no claim for reimbursement was filed and the record contained no evidence to the contrary). The medical expense deduction is allowed only to the extent it exceeds 10% of adjusted gross income. I.R.C. § 213(a); Treas. Reg. § 1.213-1(a)(3). The taxpayer must substantiate medical expense deductions with "the name and address of each person to whom payment for medical expenses was made and the amount and date of the payment thereof in each case." Treas. Reg. § 1.213-1(h).

At trial Mrs. Patitz testified to receiving loans from family members to offset medical expenses incurred on behalf of her father, as well as paying health insurance premiums on behalf of her family. Yet, there was no testimony whether these alleged loans were paid back or if health insurance covered any of the reported expenses for her father, herself, or her immediate family.

We find there is insufficient evidence in the record to reasonably determine that petitioners paid these expenses. We are not persuaded that bank statements, credit card statements, or other evidence that could demonstrate these expenses were paid could have been attained or provided.

Accordingly, we conclude there is insufficient evidence in the record to substantiate medical expense deductions in excess of the amount respondent already conceded.

III.   *Schedule C Deductions*

Respondent disallowed petitioners' abovementioned claimed Schedule C deductions for 2015 and 2016.

Mrs. Patitz contends that she is entitled to deduct Schedule C expenses related to her insurance business activities for 2015 and 2016. Moreover, she testified at trial that some of her Schedule C business records for 2015 and 2016 were not introduced into the record for the same reasons as her Schedule A expense records—they were lost when moving or destroyed by Hurricane Matthew, or the associated credit card accounts were closed because of fraud.

While Mrs. Patitz furnished some receipts indicating costs for postage, shipping, and customer gifts, no other receipts or other evidence were provided. She failed to present any business records,

**[\*18]** accounting records, bank statements, or credit card statements to substantiate her reported expenses.

Accordingly, we find that Mrs. Patitz has not met her burden with respect to her Schedule C deductions for 2015 and 2016; thus, respondent's disallowance of her Schedule C deductions is sustained.

IV.    *Accuracy-Related Penalties*

Respondent determined that petitioners are liable for accuracy-related penalties for substantial understatements of income tax under section 6662(a) and (b)(2) for 2015 and 2016.

Section 6662(a) and (b)(2) imposes a penalty equal to 20% of the portion of an underpayment of tax required to be shown on a taxpayer's return that is attributable to a "substantial understatement of income tax." An understatement of income tax is a "substantial understatement" if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. I.R.C. § 6662(d)(1)(A).

The Commissioner bears the burden of production with respect to a penalty imposed by section 6662(a) and is required to present sufficient evidence showing that the penalty is appropriate. *See* I.R.C. § 7491(c); *Higbee v. Commissioner*, 116 T.C. 438, 446–47 (2001). Respondent must also show compliance with the procedural requirements of section 6751(b)(1). *See* I.R.C. § 7491(c); *Graev v. Commissioner*, 149 T.C. 485, 493 (2017), *supplementing and overruling in part* 147 T.C. 460 (2016).

Section 6751(b)(1) provides that no penalty shall be assessed unless "the initial determination" of such assessment was "personally approved (in writing) by the immediate supervisor of the individual making such determination." The initial penalty determination was made by Ms. Muchow on August 6, 2018, and approved in writing by her then-immediate supervisor, Ms. Grieco, on August 7, 2018. Petitioners did not assert that respondent failed to meet his burden under section 6751. We find that respondent complied with all procedural requirements to assert the accuracy-related penalties under section 6662 for 2015 and 2016.

A taxpayer may avoid a section 6662(a) penalty by showing that there was reasonable cause for the underpayment and that the taxpayer acted in good faith. I.R.C. § 6664(c)(1); *Higbee*, 116 T.C. at 446–47. The determination of whether a taxpayer acted with reasonable cause and

**[\*19]** in good faith is made on a case-by-case basis, taking into account all of the pertinent facts and circumstances, including the taxpayer's efforts to assess the proper tax liability and the taxpayer's knowledge, experience, and education. Treas. Reg. § 1.6664-4(b)(1).

Respondent contends that petitioners "failed to meet their burden to show reasonable cause." We agree. Petitioners have offered no corroborating evidence to substantiate expenses, nor are we convinced that they were unable to account for their alleged lost and inaccessible documents. No documentation or detailed accounts of the water damage from Hurricane Matthew were provided, nor were any documents provided to substantiate petitioners' claim of credit card fraud prohibiting the recovery of their statements. Lastly, petitioners admitted leaving boxes of information and records behind when moving.

Consequently, we conclude that petitioners have failed to establish reasonable cause, and we therefore find that petitioners are liable for accuracy-related penalties under section 6662(a) to the extent Rule 155 computations show there are underpayments and substantial understatements of income tax for 2015 and 2016.

We have considered all of the arguments that the parties made, and to the extent they are not addressed herein, we find the arguments to be moot, irrelevant, or without merit.

To reflect the foregoing,

*Decision will be entered under Rule 155.*